State of Nebraska, appellee, v.
Steven D. Avey, appellant.
___ N.W.2d ___

Filed May 30, 2014.    No. S-13-666.

1. **Criminal Law: Courts: Appeal and Error.** In an appeal of a criminal case
   from the county court, the district court acts as an intermediate court of appeals,
   and its review is limited to an examination of the record for error or abuse
   of discretion.
2. **Courts: Appeal and Error.** Both the district court and a higher appellate
   court generally review appeals from the county court for error appearing on
   the record.
3. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing
   on the record, an appellate court's inquiry is whether the decision conforms to
   the law, is supported by competent evidence, and is neither arbitrary, capricious,
   nor unreasonable.
4. **Appeal and Error.** An appellate court independently reviews questions of law in
   appeals from the county court.
5. **Criminal Law: Courts: Appeal and Error.** When deciding appeals from crimi-
   nal convictions in county court, an appellate court applies the same standards of
   review that an appellate court applies to decide appeals from criminal convictions
   in district court.
6. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and
   Error.** In reviewing a trial court's ruling on a motion to suppress based on a
   claimed violation of the Fourth Amendment, an appellate court applies a two-part
   standard of review. Regarding historical facts, an appellate court reviews the trial
   court's findings for clear error, but whether those facts trigger or violate Fourth
   Amendment protections is a question of law that an appellate court reviews inde-
   pendently of the trial court's determination.
7. **Constitutional Law: Search and Seizure.** It is axiomatic that for the protections
   of the Fourth Amendment to apply, a seizure must have occurred.
8. ____: ____. A seizure in the Fourth Amendment context occurs only if, in view
   of all the circumstances surrounding the incident, a reasonable person would have
   believed that he or she was not free to leave.

Appeal from the District Court for Lancaster County, John
A. Colborn, Judge, on appeal thereto from the County Court
for Lancaster County, Laurie Yardley, Judge. Judgment of
District Court affirmed.

Mark E. Rappl for appellant.

Jon Bruning, Attorney General, and Melissa R. Vincent
for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE
Steven D. Avey appeals the order of the district court for Lancaster County which affirmed his convictions in the county court for Lancaster County for driving under the influence (DUI), third offense, and for failure to yield the right-of-way. At issue in the county court and on appeal to the district court were the merits of Avey's motion to suppress in which he claimed to have been seized in violation of Fourth Amendment protections when, at a police officer's request, he returned to the scene of a motor vehicle accident. Both courts rejected Avey's claim, as do we. Accordingly, we affirm.

## STATEMENT OF FACTS
Avey was involved in an accident on the evening of August 10, 2012. Avey pulled his vehicle out of a parallel parking space along 13th Street in Lincoln, Nebraska, and collided with a vehicle driven by Benjamin Howard. Avey got out of his vehicle and made contact with Howard. Avey gave Howard information, including his name, address, and telephone numbers, as well as his insurance information. Howard did not have his insurance information, to give to Avey. After Howard told Avey that he had called the police and that they were on their way, Avey told Howard that he was going to leave because he had already given Howard the necessary information.

Shortly after Avey left, Officer Joseph Fisher arrived at the accident scene and interviewed Howard. Howard gave Fisher the information that Avey had given him, including Avey's telephone number. Fisher called Avey, asked him whether he had been involved in an accident, and asked him to return to the scene, which Avey did. Fisher made contact with Avey at the driver's side door of Avey's vehicle. Fisher observed that Avey had watery eyes, and he noticed a moderate smell of alcohol. Fisher performed field sobriety tests on Avey, and, based on the results of the tests, Avey was cited for DUI.

Avey was also cited for failure to yield in connection with the accident.

The State filed a complaint against Avey in the county court for Lancaster County charging him with DUI in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010) and with failure to yield the right-of-way after stopping or parking in violation of Neb. Rev. Stat. § 60-6,150 (Reissue 2010). The State alleged in the complaint that Avey had two prior convictions for DUI.

Avey filed a motion to suppress evidence obtained as a result of what he asserted was a seizure in violation of the Fourth Amendment. Avey contended that he was seized when Fisher called him and required him to return to the accident scene. At a hearing on the motion to suppress, Fisher testified that he had not ordered Avey to return to the scene but that he had merely requested that he return. Fisher wanted Avey to return, because Fisher estimated that the damage to Howard's vehicle was over $1,000 which would require the filing of a report with the State. At the time he called Avey, Fisher did not suspect that alcohol had been involved and instead he suspected that Avey was guilty of negligent driving, which was a traffic infraction. Fisher conceded on cross-examination at the suppression hearing that he did not recall the exact words he said when he called Avey and that it was "possible" that he had told Avey that if he did not return he would be cited for leaving the scene of an accident.

Avey testified at the suppression hearing that Fisher called and told him that he needed to return to the accident scene. Avey testified that he asked Fisher what would happen if he did not return and that Fisher replied that he would be charged with leaving the scene of an accident. When asked at the hearing whether he felt compelled to return, Avey replied, "I thought it would be a good idea."

At the conclusion of the hearing, the county court announced its decision overruling the motion to suppress. In announcing its decision, the county court found that "it was [Avey's] choice to get in the car to come down" and that Avey "could have told the officer [he] wasn't feeling well, or he didn't want to" but Avey did not give Fisher "any indication that he didn't want

. . . to come down or couldn't come down." The county court further stated that because it appeared that Avey "had committed at least a traffic infraction, and was going to get a ticket if he came back down, . . . it was reasonable for the officer to call him to come back down and complete the investigation." The county court stated that it did not know of any case law that "says a phone call asking him to come back down to the scene to finish conducting an investigation is a seizure." The county court concluded that there was not a seizure, and it therefore overruled the motion to suppress.

The case proceeded to a bench trial. The parties stipulated to the evidence subject to Avey's renewed motion to suppress, which the county court again overruled. The county court found Avey guilty of DUI and of failure to yield. The county court thereafter found the DUI to be a third offense and sentenced Avey to 30 days in jail, 3 years' probation, a $1,000 fine, and a 2-year license revocation for the DUI conviction. The county court imposed a $75 fine for failure to yield.

Avey appealed his convictions and sentences to the district court. He claimed that the county court had erred when, inter alia, it overruled his motion to suppress. Avey argued to the district court that he was seized when he was required to return to the scene of the accident. The district court rejected Avey's claims on appeal and affirmed Avey's county court convictions and sentences.

Avey appeals the district court's affirmance of his county court convictions.

## ASSIGNMENT OF ERROR

Avey claims that the district court erred when it affirmed the county court's order overruling his motion to suppress.

## STANDARDS OF REVIEW

[1-5] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011). Both the district court and a higher appellate court generally review appeals from the county court for

error appearing on the record. *Id*. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. But we independently review questions of law in appeals from the county court. *Id*. When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court. *Id*.

[6] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013).

## ANALYSIS

Avey claims that the district court erred when it affirmed the county court's order overruling Avey's motion to suppress. We conclude that the county court did not err when it concluded that there was no seizure that would have triggered Fourth Amendment protections and that therefore the district court did not err when it affirmed the order overruling Avey's motion to suppress.

[7,8] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013). The present case involves an allegation of an unreasonable seizure. With respect to such a claim, it is axiomatic that for the protections of the Fourth Amendment to apply, a seizure must have occurred. *State v. Hedgcock*, 277 Neb. 805, 765 N.W.2d 469 (2009). A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. *Id*.

To determine whether an encounter between an officer and a citizen reaches the level of a seizure under the Fourth Amendment, we employ the analysis set forth in *State v. Van Ackeren*, 242 Neb. 479, 486-87, 495 N.W.2d 630, 636 (1993), in which we described the three levels, or tiers, of police-citizen encounters as follows:

> "The first tier of police-citizen encounters involves no restraint of the liberty of the citizen involved, but rather the voluntary cooperation of the citizen is elicited through non-coercive questioning. This type of contact does not rise to the level of a seizure and therefore is outside the realm of [F]ourth [A]mendment protection. . . . The second category, the investigative stop, is limited to brief, non-intrusive detention during a frisk for weapons or preliminary questioning. This type of encounter is considered a 'seizure' sufficient to invoke [F]ourth [A]mendment safeguards, but because of its less intrusive character requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime. . . . The third type of police-citizen encounters, arrests, are characterized by highly intrusive or lengthy search or detention. The [F]ourth [A]mendment requires that an arrest be justified by probable cause to believe that a person has committed or is committing a crime."

Quoting *United States v. Armstrong*, 722 F.2d 681 (11th Cir. 1984).

In his motion to suppress, Avey asserted that he was seized in violation of the Fourth Amendment when Fisher called him and told him that he needed to return to the scene of the accident. Because it concluded that Avey was not seized for purposes of triggering Fourth Amendment protections, the county overruled the motion to suppress.

In reaching its conclusion, the county court made factual findings that Fisher's telephone call to Avey was "a phone call asking him to come back down to the scene to finish conducting an investigation" and that Avey's return to the scene in response to the call was his "choice to get in the car to

come down." The county court effectively found that Fisher's call to Avey was a request and that Avey willingly returned to the scene rather than being compelled to do so. These findings are supported by testimony of both Fisher and Avey at the suppression hearing.

The record shows that Fisher testified that he asked Avey to return and that he did not order Avey to return. Although Avey testified that Fisher said that Avey would be charged with leaving the scene of an accident if he did not return and Fisher testified that such comment was possible, there was contrary evidence that it was Avey's choice to return. Avey was asked by his attorney, "[D]id you feel compelled to come back . . . ?" Rather than simply agreeing with this description, Avey replied, "I thought it would be a good idea." Given the testimony, we determine that the county court's findings that Fisher asked Avey to return and that Avey made a choice to return were not clear error.

Based on these findings, the county court made the legal conclusion that there was no seizure that would trigger Fourth Amendment protections. We agree with this legal conclusion. In *State v. Burdette*, 259 Neb. 679, 702, 611 N.W.2d 615, 633 (2000), we stated that a defendant who voluntarily accompanied officers to the sheriff's headquarters was not seized "because one who voluntarily accompanies the police for questioning has not been seized for Fourth Amendment purposes." By the same reasoning, we conclude as a matter of law that Avey was not seized when he voluntarily returned to the scene for questioning with regard to the accident.

We further note that the testimony shows that Avey decided to return based on a single telephone call of relatively brief duration rather than circumstances indicating that Fisher made persistent requests or pressured Avey to return. Other courts commenting on the significance of police telephone calls to identified suspects have determined that such contact, even if abusive, does not constitute a restraint on the suspect's freedom so as to elevate the call into a seizure for purposes of the Fourth Amendment. E.g., *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194 (7th Cir. 1985). Facts such as the ease with which an individual can hang up and sometimes the distance

of the caller are cited as factors inconsistent with restraint. *Id*. We agree that these are relevant considerations.

Given the voluntariness with which Avey returned to the scene and the facts surrounding the telephone call, in the present case, we conclude there was no seizure. Fourth Amendment protections were not triggered, and there was no constitutional violation requiring suppression of evidence.

## CONCLUSION

We conclude that under the facts as found by the county court, Avey was not seized for Fourth Amendment purposes, and that therefore, the county court did not err when it overruled his motion to suppress and the district court did not err when it affirmed this ruling. We affirm the district court's decision which affirmed Avey's convictions and sentences.

Affirmed.

———————————

Michael Daniels, appellee, v. Ruby
Maldonado-Morin, appellant.
___ N.W.2d ___

Filed May 30, 2014.    No. S-13-738.

1.  **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
2.  ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
3.  **Parental Rights: Child Custody.** The custodial parent has the right to travel between states and the right to migrate, resettle, find a new job, and start a new life.
4.  **Child Custody.** To prevail on a motion to remove a minor child to another jurisdiction, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state. After clearing that threshold, the custodial parent must next demonstrate that it is in the child's best interests to continue living with him or her.
5.  ____. The paramount consideration on a motion to remove a child to another jurisdiction is whether the proposed move is in the best interests of the child.